IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:19-MJ-295 |
| | ) | |
| ROBERT MARSHALL, | ) | **Under Seal** |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

Your affiant, Jose J. Oquendo, being duly sworn, hereby deposes and states as follows:

**INTRODUCTION**

1.  I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I am currently assigned to the ATF Falls Church Group II Field Office and have been employed with ATF for approximately 5 years. I have been a federal law-enforcement officer with the United States Government for approximately seven years. Prior to joining ATF, I served with the U.S. Secret Service in Washington, D.C. for approximately two and a half years.

2.  As an ATF agent, I have successfully completed numerous training programs hosted by the ATF and the Federal Law Enforcement Training Center dealing in various techniques of investigating crimes involving firearms and narcotics-related offenses. In particular, I have received specialized training in the investigation of state and federal crimes involving the use of alcohol, tobacco, firearms, explosives, and arson. As an ATF agent, I have conducted and participated in federal criminal investigations involving the use, possession, and

1

transfer of firearms, as well as narcotics-related investigations.

3. I submit this affidavit in support of a criminal complaint and arrest warrant charging ROBERT ALLEN MARSHALL ("MARSHALL") with making false statements in relation to the purchase of a firearm, in violation of Title 18, United States Code, Section 924(a)(1)(A).

4. The facts and information contained in this affidavit are based upon my personal knowledge of the investigation and information conveyed to me by other state and federal law-enforcement officers. All observations I did not personally make were related to me by the individuals who made them, or come from my review of reports, documents, records, and other physical evidence obtained during the course of this investigation. This affidavit contains the information necessary to establish probable cause for this application. It does not include each and every fact known by me or known by the government.

## PROBABLE CAUSE

5. Based upon my training and experience, I am aware that federal law prohibits federal firearms licensees ("FFLs") from selling a firearm to a non-licensee purchaser "unless the [FFL] records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a). I am further aware that the law requires FFLs to retain "as a part of the required records, each Form 4473 obtained in the course of transferring custody of the firearms." 27 C.F.R. § 478.124(a). Accordingly, any false statement a purchaser makes on a Form 4473 pertains to information an FFL is required by law to maintain.

6. On or about January 19, 2017, Jackson CRISLER and other individuals visited Gander Mountain #345, a sporting-goods store formerly located at 14011 Worth Avenue,

Woodbridge, Virginia, within the Eastern District of Virginia. Gander Mountain #345 is an FFL. During this visit, CRISLER looked at and inquired about a Glock semiautomatic handgun, but he did not purchase it.

7. On or about January 20, 2017, CRISLER and Daniel MOORE visited Gander Mountain #345. CRISLER examined the same Glock handgun that he examined the day before. After CRISLER examined the Glock handgun, he stepped away from the counter and MOORE attempted to buy the Glock handgun. Gander Mountain #345 staff denied the sale because they believed it to be a straw purchase.

8. On or about January 22, 2017, CRISLER and MARSHALL visited Gander Mountain #345. CRISLER spent several minutes examining firearms before leaving the store. MARSHALL then entered the store and paid for one of the firearms CRISLER had examined. Due to the late hour, Gander Mountain staff told MARSHALL that he would have to return the following morning to complete the paperwork and undergo a background check.

9. On or about January 23, 2017, MARSHALL returned to Gander Mountain #345. MARSHALL purchased a Taurus Arms model PT738 9x19mm, commonly referred to as a 9mm, semiautomatic pistol, bearing serial number "1D012052." The Taurus model PT738 is a semi-automatic pistol manufactured outside the State of Virginia. On or about January 23, 2017, immediately after MARSHALL purchased the firearm, Gander Mountain #345 staff reported the sale to law enforcement as a possible straw purchase.

10. MARSHALL was required by law to truthfully fill out ATF FORM 4473 to purchase the firearm from Gander Mountain #345. In purchasing the firearm on January 23, 2017, MARSHALL responded "Yes" to a question on ATF Form 4473 that he was the actual

buyer of the firearm. On Section 14 of the ATF Form 4473, MARSHALL certified by signature that his answers on the form were "true, correct, and complete," and that he understood that "making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to [the] transaction, is a crime punishable as a felony under Federal law."

11. On or about January 23, 2017, law enforcement went to interview MARSHALL in Woodbridge, Virginia, at the address he listed on the ATF Form 4473. When officers knocked on the door of the home, a female answered the door and identified herself as MARSHALL's mother. When asked about MARSHALL, she told officers that MARSHALL did not live at that address, and gave officers MARSHALL's current address: 4370 Whitmer Drive, Dale City, Virginia.

12. Later that day, law enforcement located MARSHALL at 4370 Whitmer Drive, Dale City, Virginia. ATF agents interviewed MARSHALL inside his apartment. Despite having purchased the Taurus model PT 738 earlier that same day, MARSHALL stated that he was no longer in possession of the Taurus model PT738. MARSHALL admitted that CRISLER provided him with the funds to purchase the firearm and that after purchasing the firearm, he gave it to Tyler—an individual whom law enforcement later identified as Tyler MATICS. MARSHALL told officers that he had been paid $30 to purchase the Taurus model PT738, and that he had not answered questions truthfully, referring to material covered in questions 11.a and 11.e on the ATF Form 4473.

13. On or about May 1, 2017, law enforcement interviewed CRISLER. CRISLER told law enforcement that he was with MARSHALL on January 23, 2017, when MARSHALL

purchased the Taurus model PT 738 at Gander Mountain #345. CRISLER told officers that MARSHALL sold the Taurus model PT 738 to MATICS.

14.     As part of its investigation, law enforcement interviewed an employee of Gander Mountain #345 ("EMPLOYEE") on multiple occasions. According to the EMPLOYEE, on January 22, 2017, CRISLER entered the store alone, walked directly to the firearm counter, and looked at the contents of the counter. After looking at the counter, the EMPLOYEE told officers that CRISLER then left the store. Soon after, the EMPLOYEE stated that MARSHALL entered the store and paid for the firearm. However, MARSHALL was unable to take the firearm with him that day. The EMPLOYEE told MARSHALL that he would have to come back the next day to fill out the required paperwork and to have a background check performed. On January 23, 2017, MARSHALL and CRISLER returned to Gander Mountain #345 together. The EMPLOYEE told officers that MARSHALL completed the firearm purchase, and then left the store with CRISLER.

15.     Security video footage from Gander Mountain #345 on January 22, 2017 at 5:41PM shows, what appears to be, CRISLER and MARSHALL walking into the store. Your affiant identified CRISLER, a young Caucasian man with long hair, by comparing the individual in the security footage to a booking photo of CRISLER in a law enforcement database. Additionally, the security footage is consistent with information obtained during interviews of the EMPLOYEE of Gander Mountain #345 from whom MARSHALL, and CRISLER attempted the firearm purchase on January 22, 2017. Security footage from Gander Mountain #345 on January 23, 2017, shows, what appears to be, CRISLER, MATICS, and MOORE approaching the gun counter. From approximately 4:50PM to 5:15PM, the security footage shows, what

appears to be, MARSHALL, a young African American male, approaching the counter, filling out paperwork, and then leaving the store. The security footage is consistent with information obtained in interviews with the EMPLOYEE of Gander Mountain #345 who completed MARSHALL's and CRISLER's firearm purchase on January 23, 2017.

## CONCLUSION

16. Based on the foregoing facts, I believe there is probable cause to conclude that, on or about January 23, 2017, in Woodbridge, Virginia, within the Eastern District of Virginia, MARSHALL made false statements in relation to the purchase of a firearm, in violation of Title 18, United States Code, Section 924(a)(1)(A).

Respectfully submitted,

_____
Jose J. Oquendo
Special Agent, ATF

Subscribed and sworn to before me
On June 28, 2019, at Alexandria, Virginia:

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge

The Honorable Michael S. Nachmanoff
United States Magistrate Judge